[Civ. No. 28820. First Dist., Div. Two. May 26, 1971.]

SUZANN RANKIN, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD, STATE
COMPENSATION INSURANCE FUND et al., Respondents.

## COUNSEL

Levy & Van Bourg and Barry J. Williams for Petitioner.

Rupert A. Pedrin, Richard E. Ryan, T. Groezinger, Loton Wells, W. R. Lowndes, J. J. Vonk and P. M. Miyamoto for Respondents.

## OPINION

**TAYLOR, J.**—This case comes before us on a writ of review to determine the legality of an order of the Workmen's Compensation Appeals Board denying a recovery to petitioner, Suzann Rankin, an employee of the Alameda County Welfare Department. Petitioner contends that her injury

arose out of and occurred in the course of her employment, and that she is entitled to an award under section 3600 of the California Labor Code.

The undisputed facts are as follows: Petitioner, at the time of the injury, was a social worker employed by Alameda County as an eligibility supervisor, and was compensated on a monthly basis for working 7½ hours a day, five days a week. It was understood that social workers were not compensated for the lunch hour extending from 12 to 1 p.m. However, they carried heavy workloads, which frequently necessitated their working through the lunch hour and at home and on the weekends in order to meet deadlines. Failure to adequately complete caseloads in the time required could lead to termination of employment.

Petitioner, whose workload was excessive, had previously been permitted to take off six of her regular compensated working hours for personal reasons. Her superiors agreed to permit her to make up these hours in her lunch periods, but she was not to credit herself with more than one-half hour in any given day. On the day in question, petitioner intended to work through the entire lunch hour and to give herself credit for the last half hour (12:30 to 1 p.m.) on the time she owed the county. She had prevailed upon her clerical assistant, crippled with polio, to work with her. There were no food facilities on the premises. At 12:15 p.m., after having worked all morning and 15 minutes into the lunch period, petitioner left the county premises and crossed the street to a lunch counter to buy sandwiches so that she and her assistant might continue to work without interruption. On her way back at about 12:20 p.m., she was assailed and robbed by two men and sustained the injuries in question. Respondent board found that petitioner's errand was entirely for her own pleasure and convenience and was unrelated in any way to her employment, and thus denied disability for her injury.

 Petitioner now contends that since her superiors in the department knowingly accepted the benefit of her work over the lunch periods and permitted her to credit at least one-half hour of such time to the six compensated hours she was in arrears, her disability arose out of and in the course of her employment, and that she is entitled to an award. We agree.

Petitioner properly relies on the so-called "personal comfort doctrine" enunciated in *Western Greyhound Lines* v. *Industrial Acc. Com.*, 225 Cal. App.2d 517 [37 Cal.Rptr. 580], *State Comp. Ins. Fund* v. *Workmen's Comp. App. Bd.*, 67 Cal.2d 925 [64 Cal.Rptr. 323, 434 P.2d 619], and *Western Pipe etc. Co.* v. *Ind. Acc. Com.*, 49 Cal.App.2d 108 [121 P.2d 35].

In *Western Greyhound Lines*, the bus driver was attacked while drinking coffee in Foster's Restaurant across the street from the bus depot. The

record indicated that she was working a night shift and had a brief layover before returning to her bus. The driver's wages continued during these layovers. The court stated that "Presumably, the applicant would not have been at Foster's Restaurant at Seventh and Market Streets at 1:45 a.m. had she not been working on a late night shift. She was drinking coffee because she had been driving a bus and would be again in a short time. Thus, she was exposed to the danger she encountered as a Greyhound employee. *Since she was paid during this time, her employment continued during such time* and all of the cases dealing with injuries and assaults during employment are applicable." (Italics added; p. 521.)

In *State Comp. Ins. Fund,* an employee was injured when he dived into a canal located on property adjacent to the employer's premises, while he was on a work break, at a time when the temperature was 105 degrees in the shade. The court, in recognizing a right of recovery, noted that the employee's activities "took place on time *for which he was drawing pay from the employer* and was in company with other employees also seeking the cooling relief from the heat, during the work break period." (Italics added; p. 927.)

In *Western Pipe,* an employee was given a half-hour off for dinner. He left the employer's premises in his automobile, parked in front of the restaurant and, while crossing the street to obtain some cigarettes, was struck by a passing motorist and killed. The court took note of the many cases holding that injuries received by *an employee while on his way to or from meals are normally not compensable,* but affirmed an award because the employee was working overtime and *his hourly wage continued while he ate his dinner off the premises.* It was held that the slight deviation of crossing the street to obtain cigarettes did not take the employee out of his employment.

Where the cases have allowed recovery on the "personal comfort theory" or as an exception to the "going and coming rule," the injuries have occurred either on the employer's premises or at a time when the employee was being compensated for his labors, or at a time when the employee was performing some special service off the premises at the instance and request of the employer and for the employer's benefit (*Western Greyhound, supra; State Comp. Ins. Fund, supra; Western Pipe, supra; Papineau* v. *Industrial Acc. Com.,* 45 Cal.App. 181 [187 P. 108]; *Smith* v. *Workmen's Comp. App. Bd.,* 69 Cal.2d 814 [73 Cal. Rptr. 253, 447 P.2d 365]; *Fireman's Fund etc. Co.* v. *Ind. Acc. Com.,* 39 Cal.2d 529 [247 P.2d 707]; *Garzoli* v. *Workmen's Comp. App. Bd.,* 2 Cal.3d 502 [86 Cal.Rptr. 1, 467 P.2d 833]; *Guest* v. *Workmen's Comp. App. Bd.,* 2 Cal.3d 670 [87 Cal.Rptr. 193, 470 P.2d 1]; *North American*

*Rockwell Corp.* v. *Workmen's Comp. App. Bd.*, 9 Cal.App.3d 154, [87 Cal.Rptr. 774]).

Respondents contend that the above cases are inapposite here because petitioner was not on the county's premises; nor was she performing any special service for her employer in buying the sandwiches; nor was she, having testified to an intention to allocate the last 30 minutes of her lunch hour to the time she owed the county, being compensated at 12:20 p.m., when she was injured.

We think this draws too fine a line. ■ It is well established policy in this state that any reasonable doubts as to whether an act is contemplated by the employment must be resolved in favor of the employee (*Western Greyhound Lines, supra*). ■ *Petitioner intended to work on county business throughout her entire lunch hour.* She had stipulated with her superiors that she would work the *lunch hours* to make up for the six hours she owed the county, but that she was not to credit herself with more than one-half hour in any one day.[1] At 12:15, after having worked for 15 minutes into the lunch hour, she and her assistant felt the need of sustenance and she took about five minutes off to run across the street for sandwiches. *She intended to resume work immediately upon her return and to eat while working.* In approving petitioner's request for personal time, her superiors had not designated any particular half-hour period of the lunch hours for which she would be credited nor required any such designation by her. Under the arrangement, petitioner would have been entitled to claim a half-hour compensated time, whether performed before or after 12:30 p.m. or partially in both half-hour segments. Thus, her own intended allocation of her time was not a determinative factor. *We emphasize that the entire hour of work was to be performed for the benefit of the county,* and it is clear from the record that this practice was approved by the department.

We conclude that the errand upon which petitioner had embarked was for the personal comfort, health and efficiency of herself and her clerical assistant and, in this sense, to the advantage of her employer, and that she had been paid for the work she was making up at that time with her supe-

---

[1]"A. Well, arrangements are generally made beforehand. Q. With whom? A. Generally, arrangements are made beforehand when personal time is requested. Arrangements are made beforehand about how the time will be made up. Q. Well, did you make the arrangements beforehand on March 10 to make up any time? A. Yes, I stipulated in my request for time off *that I would work during my lunch hour,* you know, to make up the time." (Italics added.)

"REFEREE: Q. How many hours of time you had taken previously did you have accrued at that time that you had to make up March 10? A. I think about six hours. MR. WILLIAMS: Q. But by working during an entire lunch hour, you could only make up half of an hour that you owe? A. That's right."

riors' permission. Thus, under the above cases, she sustained injury which arose out of and occurred within the scope and course of her employment and recovery should have been allowed.

The order is annulled.

Kane, J., concurred.

**SHOEMAKER, P. J.**—I dissent. This petition was before us once before, at which time we denied it without comment. Upon petition for hearing by the Supreme Court, a hearing was granted and the Supreme Court thereafter ordered the matter back to us by issuing an alternative writ returnable before us and citing the following cases: *State Comp. Ins. Fund* v. *Workmen's Comp. App. Bd.* (1967) 67 Cal.2d 925 [64 Cal.Rptr. 323, 434 P. 2d 619]; *Western Greyhound Lines* v. *Industrial Acc. Com.* (1964) 225 Cal.App.2d 517 [37 Cal.Rptr. 580]; and *Smith* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 814 [73 Cal.Rptr. 253, 447 P.2d 365]—the first two cases involving the "personal comfort" doctrine, and in all of which the injuries were incurred during compensated time.

The majority opinion turns its back on the substantial evidence rule and works out a theory which extends the "personal comfort" doctrine far beyond any present authority. I cannot agree to this approach, not only because I am convinced that the facts do not warrant it but also because I believe that if any new extension is to be made, the Supreme Court should be the one to do so.

There is no dispute as to the facts: the employee had taken six hours off for her own affairs. She was paid therefor. There was a department rule that this time off could be made up during the one-hour lunch period at the rate of no more than 30 minutes during each such lunch hour. (It required no stipulation between the parties as the majority opinion would indicate in footnote 1.) The employee injured was the head of her division and, as disclosed by her counsel on argument before us, had the authority to set the time out of her lunch hour that would be applied as make-up time. In this case she stated that on this day she had decided that the time from 12:30 to 1 p.m. would be the time applied toward discharging her duty to work off one-half hour of the time she owed the company. She never reached that point because she was injured around 12:20 p.m., some five minutes after she left her office to get a sandwich at a shop located across the street from her office. Under these facts, I can see no possible application of the "personal comfort" doctrine. The employee had worked from 12 to 12:15 when she left to go for the sandwich; from other testimony we are told this

had been done at other times. However, this does not enter into our situation except as a confusing factor, for it is clear that the purpose of the rule as to working off time owed was that the employee was not to forego the necessity of eating and other requirements, to the detriment of his health. In other words, for his own good he was not going to be permitted to miss a whole lunch hour to devote it to making up time—a portion of that hour period must be given to getting away from the job with its well-known beneficial effects (i.e., coffee breaks).

By her own testimony, the time from 12 to 12:15 p.m. was not to be compensated and she makes no claim therefor. My colleagues ignore this and argue that she could make up the time at any time during the hour, so, obligingly, as advocates on her behalf, they extend to her the first one-half hour of the lunch period as compensated time and thus arrive at the conclusion that she went across the street to get her sandwich and was injured at a time when the one-half hour had not expired and hence she is entitled to workmen's compensation.

Is it not more logical, if we follow this route, and knowing that she could set her make-up time to suit herself during the lunch hour, to break it up as follows: the 15 minutes from 12 to 12:15 are applied to makeup, and are compensated time; then, since she must eat—and that is the primary purpose of the rule—she goes on the time allotted for lunch, for which she is not compensated, and then when she returns to her work she can, up to 15 more minutes, claim credit for make-up time.

This was a lunch time injury and I find nothing to remove it from the general rule that an employee on his way to or from a meal is performing a purely personal action; and since he is then rendering no service to his employer, an off-premises injury sustained in the course of such a trip is not compensable. The majority opinion abolishes this rule, with the result that it shifts to the employer the not inconsiderable risks which the employee incurs when he leaves the place of work and goes beyond the dominion and control of the employer, something the Legislature has not seen fit to do. (*Arboleda* v. *Workmen's Comp. App. Bd.* (1967) 253 Cal.App.2d 481, 483 [61 Cal.Rptr. 505].)

I will accept the employee's contention that she had a heavy workload, but I am also cognizant of the fact it was not so heavy that she was not permitted to take time off for her own personal reasons, as the evidence shows that in the preceding month she had taken personal time off and at the time in question had six hours to make up.

The case of *Smith* v. *Workmen's Comp. App. Bd., supra,* to which our attention was directed, in my opinion has no application to this proceeding.

The *Smith* case (a four-to-three decision) was one in which a social worker was *required* to use his own car in his employment. The court found that the "employer's requirement that the worker furnish a vehicle of transportation on the job curtails the application of the going and coming exclusion." The injury was not sustained during the lunch hour but, rather, on the way to work.

The requirement by the employer in our case was that the employee *must*, out of the hour set aside for lunch, take at least one-half thereof for the purpose of such period and the only means by which she could use the remaining one-half of the hour in her work was when she was making up time that she had theretofore taken off for her personal affairs.

I can find nothing in this case to warrant any departure from the rule that factual determinations of the board must be upheld if, based upon the entire record, such findings are supported by the substantial evidence. (*LaVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 637 [83 Cal.Rptr. 208, 463 P.2d 432].) The testimony of petitioner and the concessions of her counsel supply the substantial evidence and the order of the board should be affirmed.

A petition for a rehearing was denied June 25, 1971, and the petition of respondent State Compensation Insurance Fund for a hearing by the Supreme Court was denied July 21, 1971.